UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION


CRYSTAL  WHITE,
KARL  CUMMINGS,
ERIN B.  CUMMINGS,
      Plaintiffs,


 -vs-                              Case No.
                                      Hon.
                                      **DEMAND FOR JURY TRIAL**


GC SERVICES LIMITED PARTNERSHIP,
ERICA KIMBALL,
JOHN DOE I,
JANE DOE I,
JOHN DOE II,
ASSOCIATED RECOVERY SYSTEMS, INC.
JENNIFER ZABROWSKI,
JANE DOE II,
JANE DOE III,
BRENDA DOE,
      Defendants.

## <u>COMPLAINT & JURY DEMAND</u>


*Crystal  White, Karl  Cummings and Erin Cummings state  the following claims for relief:*

### <u>Jurisdiction</u>

1.     This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2.     This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### <u>Parties</u>

3.     The Plaintiffs to this lawsuit are as follows:

     a.     Crystal  White who resides in Southfield, Michigan.

     b.      Karl  Cummings who resides in Southfield, Michigan, and who is the father of Crystal White.

     c.      Erin Cummings who resides in Southfield, Michigan, and who is the mother of Crystal White.

4.     The Defendants to this lawsuit are as follows:

     a.      GC Services Limited Partnership ("GC Services") which is a limited partnership doing business in Michigan.

     b.      Erica Kimball, a debt collector and agent for GC Services.

     c.      John Doe I, a a debt collector and agent for GC Services.

     d.      Jane Doe I, a debt collector and agent for GC Services.

     e.      John Doe II, a debt collector and agent for GC Services.

     f.      Associated Recovery Systems, Inc.  ("ARS") which is a corporation doing business in Michigan.

     g.      Jennifer Zabrowski, a debt collector and agent for ARS.

     h.      Jane Doe II, a debt collector and agent for ARS.

     i.      Jane Doe III, a debt collector and agent for ARS.

     j.      Brenda Doe, a debt collector and agent for ARS.

## Venue

5.     The transactions and occurrences which give rise to this action occurred in the counties of Oakland and Macomb.

6.     Venue is proper in the Eastern District of Michigan.

**Allegations Relating to GC Services and its Individual Debt Collectors**

7.      Some time prior to 2007, GC Services was engaged by Citibank (SD), N.A. to collect an account from Mrs. White; alternatively some time prior to 2007, GC Services purchased the account previously held by an unknown debt buyer or by Citibank.

8.      Beginning in August 2006 and on a monthly basis through mid 2007, Mrs. White had been paying $50.00 on the account through a credit management service, an amount within her budgetary constraints.

9.      Even though Mrs. White had been paying on the Citibank account, in 2007, GC Services began an abusive collection campaign against Mrs. White which involved unlawful threats and harassment of Mrs. White, her parents and parent's neighbor.

10.     Mrs. White was pregnant during the course of GC Services collection campaign.

11.     In June 2007, GC Services debt collector Erica Kimball called Mrs. White's elderly grandmother, Maxine Cummings.

12.     Ms. Kimball told Maxine Cummings that she was a friend of Crystal's and requested her phone number.

13.     Maxine Cummings told Collector Kimball that she did not have Crystal's phone number.

14.     Nonetheless, Collector Kimball called Maxine Cummings several times after that.

15.     Collector Kimball failed to state that she was confirming or correcting location information, as she was required to by 15 U.S.C. §1692b.

16.     Collector Kimball communicated with Maxine Cummings more than once and without the consent of Mrs. White or Maxine Cummings, and with the intention of harassing Mrs. White.

17.     Collector Kimball's statement that she was a friend of Crystal's was false and constituted

3

a misrepresentation of the collector's identity and that of GC Services.

18.  Later on, Collector Kimball called the neighbor of Mrs. White's parents, Joanne Marsh, and told her that it was urgent that Crystal call.

19.  Joanne Marsh walked over to the Cummings' residence and gave Crystal's mother, Mrs. Cummings, the message that Crystal needed to call the number right away.

20.  Collector Kimball's statement that Crystal needed to call right away was false, conveyed a false sense of urgency and was intended to put undue pressure on Mrs. White to pay the account.

21.  Collector Kimball's statement conveyed a false sense of urgency.

22.  In June, July and August of 2007, GC Services engaged in a telephone campaign that involved calling the residence of Mr. and Mrs. Cummings several times a day, Monday through Saturday as early as 7:00 in the morning and as late as 11:00 at night.

23.  Those calls were frequently placed by Collector Kimball and other GC Services' debt collectors, but on multiple occasions were placed by an computer auto dialer program.

24.  GC Services repeatedly made these phone calls even though Mrs. Cummings told Collector Kimball, in the very first of the calls, that Crystal did not live there.

25.  In that series of calls, Collector Kimball failed to state that she was confirming or correcting location information, as she was required to by 15 U.S.C. §1692b.

26.  Collector Kimball and other debt collectors communicated with Mr. and Mrs. Cummings more than once and without the consent of Mrs. White or the Cummings', and with the intention of harassing the Cummings' and Mrs. White.

27.  These calls were made repeatedly and continuously all with the intention of annoying,

4

abusing, and harassing Erin and Karl Cummings and Mrs. White.

28.    In that series of calls, Collector Kimball  told Mrs.  Cummings on multiple occasions that Crystal owed a debt that needed to be paid and that if Crystal did not pay they would repossess Crystal's car, make sure Crystal would never get a job, would never get any credit, and  they would stop her from getting a home.

29.    Defendants'  communicated that Mrs. White owed a debt to a third party, an act that is prohibited by  15 U.S.C. §1692b.

30.    GC Services could not legally take the action threatened by Collector Kimball, did not take any of the actions threatened by Collector Kimball,  nor did it intend to take those actions and Defendants' threats to take such action were intended to coerce Mrs. White into making payments to it on the account.

31.    Defendants' threats constitute threats to take action that cannot legally be taken and that was not intended to be taken.

32.    Defendants'  threats constituted false representations and deceptive means to collect or attempt to collect the account.

33.    Defendants' threats were harassing, oppressive,  and abusive to Mrs.  Cummings and Mrs. White.

34.    Defendants' threats were an unfair and unconscionable means of collecting the account.

35.    Mrs. Cummings was distressed,  anxious,  fearful, and concerned for the well being of her daughter and unborn grandchild as a result of that call.

36.    In June of 2007, Collector John Doe I called Karl Cummings on his cell phone while he was on duty driving a bus.

5

37.     John Doe I told Mr. Cummings that if his daughter didn't pay the account, Crystal would be thrown in jail – they would be calling the Southfield police and the police would issue a warrant for her arrest.

38.     Defendants' communicated that Mrs. White owed a debt to a third party, an act that is prohibited by 15 U.S.C. §1692b.

39.     GC Services could not legally take the action threatened by John Doe I, did not take any of the actions threatened by John Doe I, nor did it intend to take those actions and Defendants' threats to take such action were intended to coerce Mrs. White into making payments to it on the account.

40.     Defendants' falsely threatened that nonpayment of the account would result in the arrest of Mrs. White, an act that would be unlawful and one Defendants' did not intend to take.

41.     Defendants' falsely represented or implied that Mrs. White had committed a crime.

42.     Defendants' threats constituted false representations and deceptive means to collect or attempt to collect the account.

43.     Defendants' threats were harassing, oppressive, and abusive to Karl Cummings and Mrs. White.

44.     Defendants' threats were an unfair and unconscionable means of collecting the account.

45.     The call to Mr. Cummings caused cell phone charges to be assessed against him.

46.     As a result of that call, Mr. Cummings was distressed, anxious, fearful, and concerned for the well being of his pregnant daughter and unborn grandchild.

47.     Next, Collector Jane Doe I called Mr. Cummings on his cell phone, while he was at work on his lunch break.

6

48.    Jane Doe I did not identify herself or her organization.

49.    Jane Doe I indicated that she knew that Mrs. White's car payments were current and speculated about whether Mr. Cummings was making the car payments.

50.    Jane Doe I then stated that Mr. Cummings should pay the bill and that they would take the car if they did not receive payment.

51.    Defendants'  communicated that Mrs. White owed a debt to a third party, an act that is prohibited by  15 U.S.C. §1692b.

52.    GC Services could not legally take the action threatened by Jane  Doe I, did not take any of the actions threatened by Jane Doe I,  nor did it intend to take those actions and  Defendants' threats to take such action were intended to coerce Mrs. White into making payments to it on the account.

53.    Defendants' threats constitute threats to take action that cannot legally be taken and that was not intended to be taken.

54.    Defendants' threats constituted false representations and deceptive means to collect or attempt to collect the account.

55.    Defendants' threats were harassing, oppressive,  and abusive to Karl Cummings and Mrs. White.

56.    Defendants' threats were an unfair and unconscionable means of collecting the account.

57.    The call to Mr. Cummings caused cell phone charges to be assessed against him.

58.    As a result of that call, Mr. Cummings was distressed,  anxious,  fearful, and concerned for the well being of his pregnant daughter and unborn grandchild.

59.    Mr. Cummings discussed the matter with Crystal White immediately after his shift ended.

60.     Crystal White then called GC Services and reached Collector Kimball.

61.     Collector Kimball demanded that Mrs. White pay $3000 that day.

62.     Collector Kimball demanded personal information about Mrs. White's husband and her in-laws.

63.     Collector Kimball told Mrs. White that she should ask them for the money to pay the account.

64.     Collector Kimball stated that if she did not pay the account, GC Services would take her car, make sure she never got a house or owned anything in her own name, and would never get a job.

65.     Further, Collector Kimball told Mrs. White that if she did not pay, they would contact the Southfield police and ensure that a warrant was issued for her arrest for grand theft.

66.     GC Services could not legally take the action threatened by Collector Kimball, did not take any of the actions threatened by Collector Kimball, nor did it intend to take those actions and Defendants' threats to take such action were intended to coerce Mrs. White into making payments to it on the account.

67.     Defendants' threats constitute threats to take action that cannot legally be taken and that were not intended to be taken.

68.     Defendants' falsely represented that the nonpayment of the account would result in Mrs. White's arrest, an act which would be unlawful and which Defendants' did not intend to take.

69.     Defendants' falsely represented or implied that Mrs. White committed a crime.

70.     Defendants' threats constituted false representations and deceptive means to collect or attempt to collect the account.

71.     Defendants' threats were harassing, oppressive,  and abusive to Mrs. White.

72.     Defendants' threats were an unfair and unconscionable means of collecting the account.

73.     Mrs. White asked Collector Kimball why the balance on the account was so high as she had been paying $50 a month.

74.     Collector Kimball told Mrs. White that her contract prohibited payments through third parties and accordingly, they could charge fees and interest to the account.

75.     Mrs. White's contract on the account does not prohibit payments through third parties and Collector Kimball's statement that it did, was a false representation of the character, amount and legal status of the account.

76.     GC Services had no legal right to charge interest and fees on the account and Mrs. White's statement that GC Services could charge interest and fees on the account was a false representation of compensation that may be received by a debt collector.

77.     The amount that GC Services demanded amounts from Mrs. White included unlawful fees and interest.

78.     GC Service falsely represented  the character, amount and legal status of the account.

79.     One week later Mrs. White called GC Services back in regard to the account.

80.     This time she reached Collector John Doe II.

81.     John  Doe II demanded payment on the account.

82.     John  Doe II also  threatened that if Mrs. White did not pay,  they would take her car and call the Southfield police.

83.     GC Services could not legally take the action threatened by John  Doe II, did not take any of the actions threatened by John   Doe II,   nor did it intend to take those actions and

9

Defendants' threats to take such action were intended to coerce Mrs. White into making payments to it on the account.

84. Defendants' threats constitute threats to take action that cannot legally be taken and that were not intended to be taken.

85. Defendants' falsely represented that the nonpayment of the account would result in Mrs. White's arrest, an act which would be unlawful and which Defendants' did not intend to take.

86. Defendants' falsely represented or implied that Mrs. White committed a crime.

87. Defendants' threats constituted false representations and deceptive means to collect or attempt to collect the account.

88. Defendants' threats were harassing, oppressive,  and abusive to Mrs. White.

89. Defendants' threats were an unfair and unconscionable means of collecting the account.

90. John  Doe II also told Mrs. White that payments from third parties were prohibited and that payment must come directly from Mrs. White.

91. Mrs. White's contract on the account does not prohibit payments through third parties and Collector Doe's statement that it did, was a false representation of the character, amount and legal status of the account.

92. The amount that GC Services' demanded from Mrs. White included unlawful fees and interest.

93. GC Services falsely represented  the character, amount and legal status of the account.

94. Following that call, GC Services called Mrs. White on her cell phone on a daily basis as many as five times a day beginning at 7 am in the morning and not ending until late at night.

95. These call caused cell phone charges to be assessed against Mrs. White.

10

96.  This part of GC Services's collection campaign, causing Mrs. White's telephone to ring repeatedly, was done with the intent to annoy, abuse and harass Mrs. White, was harassing, oppressive and abusive in connection with the collection of a debt.

97.  Defendants' abusive and illegal tactics caused enormous distress, anguish, fear, anger, humiliation as well as other damages to the pregnant Mrs. White, and to her parents Erin and Karl Cummings.

98.  As a result of the acts alleged above, Plaintiffs' have suffered damages.

### Allegations Relating to ARS and its Individual Debt Collectors

99.  Mrs. White is a student who relies on student loans in order to make tuition payments.

100.  Some time in 2007, ARS was engaged by Citibank (SD), N.A. to collect an account from Mrs. White; alternatively some time in 2007, ARS purchased the account previously held by an unknown debt buyer or by Citibank.

101.  ARS first communicated with Mrs. White via a collection letter dated November 14, 2007, sent to her home address in which it demanded $3734.82 on the account.

102.  This amount was a false representation of the the character, amount and legal status of the account as it includes unlawful interest and fees.

103.  ARS knew Mrs. White's home phone number and address.

104.  Nonetheless, ARS began its collection campaign by first calling Mrs. White's parents, Mr. and Mrs. Cummings, who at that time lived together at a different location than Mrs. White.

105.  ARS called Mr. and Mrs. Cummings at least 12 times on the account in the period from November 24, 2007 until December 31, 2007.

106.  During those calls, ARS failed to state that it was confirming or correcting location

11

information, as required by 15 U.S.C. §1692b.

107.   During those calls, ARS failed to state that the communication was from a debt collector.

108.   During those calls, ARS stated that it was "urgent" and "imperative" that Crystal call today or "as soon as possible."

109.   It was not urgent and imperative that Mrs. White call that day and the communication of this false sense of urgency was a false, deceptive and misleading representation.

110.   Mr. Cummings spoke to ARS debt collector Jane Doe II.

111.   Jane Doe II told Mr. Cummings that Mrs. White owed a debt and that he should pay it.

112.   Defendants' communicated that Mrs. White owed a debt to a third party, an act that is prohibited by 15 U.S.C. §1692b.

113.   Mr. Cummings told Jane Doe II that Mrs. White did not live at his residence and that ARS should stop calling him.

114.   Nonetheless, ARS called the Cummings residence on multiple occasions thereafter.

115.   These multiple calls by ARS to the Cummings were communications to third parties without the consent of the Cummings or Mrs. White and were made to harass Mrs. White into paying the account.

116.   On December 28, 2007, Jennifer Zabrowski telephoned Mrs. White in order to collect the account.  Collector Zabrowski demanded that Mrs. White pay the account that day.

117.   Collector Zabrowski stated that she had reviewed Mrs. White's credit report learned that Mrs. White was current with her car payments and demanded to know who was making the payments.

118.   Collector Zabrowski further learned from the credit report that Mrs. White was a student and

stated that if Mrs. White did not pay the account, ARS would prevent her from getting any further student loans.

119. Collector Zabrowski's statements that the outstanding collection account would impact her ability to obtain further loans was a false, deceptive and misleading statement.

120. On January 4, 2008, Collector Zabrowski called Mrs. Cummings and stated that she had called for Crystal 12 times since November 24, 2007.

121. Collector Zabrowski did not provide the notice required by 15 U.S.C. §1692b, that she was calling to confirm or correct location information regarding Mrs. White .

122. Mrs. Cummings told Collector Zabrowski to stop calling.

123. This call by ARS to the Cummings residence was a communication to a third party without the consent of the Cummings or Mrs. White and was made to harass Mrs. White into paying the account.

124. On January 4, 2008, ARS called Mrs. White's home again. This time Collector Jane Doe pressed her for payment.

125. Mrs. White requested that Collector Doe state her name but Collector Doe refused to identify herself.

126. Collector Doe's failure to identity herself was a false and misleading representation.

127. Mrs. White requested that Collector Doe provide her certain information about the account

128. Rather than provide that information, Collector Doe stated that Mrs. White should seek an action against Citibank and then transferred her to Brenda Doe.

129. The statement that Mrs. White should take action against Citibank regarding the lack of information accessible to Mrs. White, was a false and misleading representation, particularly

where it is the debt collector that  is obligated to provide validation information under the FDCPA, 15 U.S.C. §1692g upon the consumer's written request.

130.   When Brenda Doe got on the line, she was rude, abusive and threatening.  She demanded that Mrs. White pay the bill.  She further demanded that she should  get her parents to pay the bill and  that she should "get a job."

131.   Brenda Doe threatened that if Mrs. White did not pay the bill, ARS would take action against her that day.

132.   ARS did not take action against Mrs. White that day  and Brenda Doe's statement that it would was a false, deceptive and misleading representation and a threat to take action that is not intended to be taken.

133.   Further Brenda Doe stated that ARS could take a judgment against her and garnish her wages.

134.   ARS did not intend to take a judgment against  Mrs. White  and Brenda Doe's statement that it could do so  was a false, deceptive and misleading representation and a threat to take action that is not intended to be taken.

135.   ARS could not garnish  Mrs. White's wages   and Brenda Doe's statement that it could do so was a false, deceptive and misleading representation and a threat to take action that could not lawfully be taken.

136.   Finally, ARS stated that if she didn't pay, Mrs. White would never get a student loan.

137.   ARS's statement that Mrs. White would never get a student loan was a false, deceptive and misleading representation.

138.   On January 5, 2008, ARS called Mrs. White's home  number  again.   This time ARS

14

disconnected the call as soon as it was picked up at the White residence.

139.   Immediately thereafter, ARS debt collector Jane Doe III called again and Mrs. White's husband Marco White answered the phone.  The first utterance  from Jane Doe III was the demand, "Who are you?"

140.   Mr. White in turn requested that the caller identify herself.

141.   Jane Doe III did not identify herself or  disclose that the communication was from a debt collector.

142.   Jane Doe III hung up on Mr. White.

143.   Jane Doe III's failure to identify herself and to state that the communication was from a debt collection resulted in the communication being false and misleading.

144.   Jane Doe III immediately called back.  Jane Doe III did not identify herself or disclose that the  communication was from a debt collector.

145.   Rather Jane Doe III rudely stated, "Crystal has an important business matter.  You need to pay Crystal's bills."

146.   Jane Doe III  hung up on Mr. White.

147.   Jane Doe III's failure to identify herself and to state that the communication was from a debt collection resulted in the communication being false and misleading.

148.   Jane Doe III statements to Mr. White that he should pay Crystal's bills was abusive, harassing and oppressive conduct.

149.   This series of telephone calls to the White residence was harassing, oppressive and abusive conduct.

150.   On January 7, 2008, ARS called two times in a row and immediately disconnected the phone

15

as soon as it was answered at the White residence.

151.    These calls were made with the intent to annoy, abuse and harass Mrs. White.

152.    In the week of January 14, 2008, Collector Zabrowski left a voicemail message for Mrs. White that she had contacted her father about the account.

153.    On January 23, 2008, Collector Zabrowski called the White residence continuously between 11:00 am and 12:00 noon.  Whenever Marco White picked up the phone, Collector Zabrowski immediately disconnected the call.

154.    These repeated and continuous phone calls were made with the intent to annoy, abuse and harass Mr. And Mrs. White.

155.    On January 23, 2008, at 8:10 pm, Collector Zabrowski called Erin Cummings at her residence.

156.    Collector Zabrowski stated that she would continue to call the Cummings residence even though even though the Cummings had previously told her not to call.

157.    Collector Zabrowski stated that the Cummings' were on a list of people that Crystal had authorized her to contact.

158.    Collector Zabrowski also stated that she would keep calling them.

159.    Collector Zabrowski became very hostile and told Mrs. Cummings that Crystal needed to get a job and take care of her responsibilites.

160.    On January 23, 2008, at 8:45 pm, Mrs. White called ARS and reached Collector Zabrowski. Mrs. White told Collector Zabrowski to stop calling her parents.

161.    Collector Zabrowski stated that she had a right to call whoever she had a phone number to. Collector Zabrowski then started yelling at Mrs. White that she needed to get a job and take

16

care of her responsibilities.

162.   Collector Zabrowski also told her that the account had now grown to $4000.00.

163.   Mrs. White discontinued the call.

164.   On January 23, 2008, Collector Zabrowski called the White residence continuously between 8:45 pm and 8:55 pm.  Each time when the call was picked up, Collector Zabrowski yelled, "You both need to get a job!" She then hung up.

165.   As a result of the acts alleged above, Plaintiffs' have suffered damages.

### COUNT  I – Fair Debt Collection Practices Act ( GC Services and all its Individual Defendant Debt Collectors)

166.   Plaintiffs'  incorporate the preceding allegations by reference.

167.   At all relevant times Defendants – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

168.   Defendants are "debt collectors" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

169.   Defendants' foregoing acts in attempting to collect this account against Mrs. White constitute violations of the FDCPA including, but not limited to the following, 15 U.S.C. §1692 b(1), b(2), b(3), c(a)(1), d, d(5), d(6), e, e(2), e(4), e(5), e(7), e(8), e(10), f, f(1) and f(6).

170.   Plaintiffs have suffered damages as a result of these violations of the FDCPA.

### COUNT  II – Michigan Occupational Code (GC Services) as alternative to claims under the Michigan Collection Practices Act

171.   Plaintiffs  incorporate the preceding allegations by reference.

172.   GC Services is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

173.   Mrs.  White is a debtor as that term is defined in M.C.L. § 339.901(f).

174.   GC Services 's foregoing acts in attempting to collect this alleged debt against Mrs. White constitute violations of the Occupational Code including but not limited to the following, M.C.L. § 339.915(a), (e), (f), (g), (n) and (q).

175.   Plaintiffs have suffered damages as a result of these violations of the Michigan Occupational Code.

176.   These violations of the Michigan Occupational Code were willful.

## COUNT III – Michigan Collection Practices Act (GC Services)as alternative to claims under the Michigan Occupational Code

177.   Plaintiffs incorporate the preceding allegations by reference.

178.   GC Services is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

179.   GC Services 's foregoing acts in attempting to collect this alleged debt against Mrs. White constitute violations of the MCPA, M.C.L. § 445.251 *et seq.* including, but are not limited to, the following M.C.L. § 445.252(a), (e), (f), (g), (n) and (q).

180.   Plaintiffs have suffered damages as a result of GC Services's violations of the Michigan Collection Practices Act.

181.    GC Services's violations of the Michigan Collection Practices Act were willful.

## COUNT IV – Invasion of Privacy By Intrusion Upon Seclusion (GC Services)

182.   Mrs. White incorporates the preceding allegations by reference.

183.   GC Services intentionally interfered, physically or otherwise, with the solitude, seclusion, or private concerns or affairs of Mrs. White.

184.   GC Services invaded the privacy of Mrs. White by threatening the pregnant Mrs White, and her parents that Mrs. White would be thrown in jail and that GC Services would dispossess

Mrs. White and her husband of their joint car and only means of transportation, without any lawful reason.

185.   Mrs.  White  had a reasonable expectation of privacy in her solitude, seclusion, or private concerns or affairs.

186.   The intrusion by GC Services occurred in a way that would be highly offensive to a reasonable person in that position.

187.   The threats caused Mrs. White anxiety, fear and concern that she would be confined to jail and dispossessed of her car and only means of transportation.

188.   Mrs.  White  has been seriously damaged as a result and is entitled to his damages and costs.

### COUNT V — Fair Debt Collection Practices Act (ARS and its Individual Debt Collectors)

189.   Plaintiffs'  incorporate the preceding allegations by reference.

190.   At all relevant times Defendants – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

191.   Defendants are "debt collectors" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

192.   Defendants' foregoing acts in attempting to collect this account against Mrs. White constitute violations of the FDCPA including, but not limited to the following, 15 U.S.C. §1692b(1), b(2), b(3), c(b), d, d(5), d(6), e, e(2),  e(4), e(5), e(10), f, f(1)

193.   Plaintiffs have suffered damages as a result of these violations of the FDCPA.

### COUNT VI – Michigan Occupational Code (ARS) as alternative to claims under the Michigan Collection Practices Act

194.   Plaintiffs  incorporate the preceding allegations by reference.

19

195.   ARS is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

196.   Mrs. White is a debtor as that term is defined in M.C.L. § 339.901(f).

197.   ARS 's foregoing acts in attempting to collect this alleged debt against Mrs. White constitute violations of the Occupational Code including but not limited to the following, M.C.L. § 339.915(a), (e), (f), (g), (n) and (q).

198.   Plaintiffs have suffered damages as a result of these violations of the Michigan Occupational Code.

199.   These violations of the Michigan Occupational Code were willful.

### COUNT VII– Michigan Debt Collection Practices Act (ARS)as alternative to claims under the Michigan Occupational Code

200.   Plaintiffs  incorporate the preceding allegations by reference.

201.   ARS is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

202.   ARS 's foregoing acts in attempting to collect this alleged debt against Mrs. White constitute violations of the Michigan Collection Practices Act, M.C.L. § 445.251 *et seq.* including, but are not limited to, M.C.L. § 445.252(a), (e), (f), (g), (n) and (q).

203.   Plaintiffs have  suffered damages as a result of ARS's violations of the Michigan Collection Practices Act.

204.    ARS's violations of the Michigan Collection Practices Act were willful.

### Demand for Jury Trial

205.   Plaintiffs demand trial by jury in this action.

### Demand For Judgment for Relief

20

206.   *Accordingly, Plaintiffs requests that the Court grant:*

a.   *Equitable relief under statute and common law, in the form of a declaration that the amount sought by Defendant is not actually owed and an injunction prohibiting further collection of those amounts.*

b.    *Actual damages.*

c.   *Statutory damages.*

d.   *Treble damages.*

e.   *Statutory costs and attorney fees.*

Respectfully Submitted,

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC

By:      s/Julie Petrik (P47131)
Attorney For Plaintiffs
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: April 9, 2008

21